UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:16-cv-00339-JHM

BEVIDERE INSURANCE COMPANY                                     PLAINTIFF

V.

TRIANGLE ENTERPRISES, INC., et al.                            DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Triangle's Motion to Dismiss or Transfer [DN 46]. Fully briefed, this matter is ripe for decision.

I. BACKGROUND

Plaintiff Bevidere's predecessor in interest, American Employers Insurance Company, issued three insurance policies to Defendant Triangle including two primary general liability policies and one umbrella policy.  (Defs.' Redacted Mem. Supp. Mot. Dismiss [DN 106-2] at 3.) The first primary liability policy (Policy No. AZW 452806) was effective for the period of June 1, 1980 to June 1, 1983; however, this policy was cancelled effective June 1, 1982.  (Id.)  The second primary liability policy (Policy No. ASW 529081) was effective for the period of June 1, 1982 and June 1, 1985.  (Id.)  These policies each provided limits of liability for bodily injury in the amount of $500,000 for each "occurrence" and $500,000 in the aggregate.  (Id. at 4.)  The umbrella policy (Policy No. AZ 8500-113) was effective for the period of June 1, 1980 to June 1, 1981.  (Id.)  This policy provided a combined single limit of $1,000,000 for each "occurrence" and in the aggregate for bodily injury and property damage.  (Id. at 3–4.)

Triangle has been named as a defendant in hundreds of lawsuits across many states alleging bodily injury from exposure to asbestos from products distributed by Triangle and/or resulting from Triangle's installation of asbestos-containing insulation.  (Id. at 6.)  More than

eighty of these underlying actions are still pending in five states, with the vast majority (sixty-one) in Illinois.  (Id.)

In February 2012, Bevidere entered into a confidential coverage in place agreement (hereinafter "CIP") with Triangle, two of Triangle's other primary insurers (Defendants Allianz Global Risk U.S. Insurance Company and General Insurance Company of America), and the CNA Trust Fund.  (Pl.'s Resp. [DN 68] at 3.)  The CNA Trust fund is an entity established to receive and distribute amounts payable under primary general liability insurance policies issued to Triangle by the Continental Insurance Company.  (Id. at 3–4.)

Since entering the CIP, Bevidere claims that it has paid more than $2,000,000 in indemnity in order to settle underlying asbestos lawsuits against Triangle.  (Defs.' Redacted Mem. [DN 106-2] at 3.)  Bevidere asserts that its indemnity payments have exhausted the $500,000 per occurrence limitation on liability applicable to the underlying claims against Triangle in each primary general liability policy and the $1,000,000 per occurrence limit of liability applicable to the underlying claims against Triangle in the umbrella policy.  (Id.)

Bevidere then commenced the instant declaratory action in this Court on June 3, 2016. (Id. at 2.)  Bevidere requests that the Court declare that it has no further duty or obligation to defend or indemnify Triangle for the underlying actions.  (Id.)  Bevidere also seeks recoupment and reimbursement from Triangle and contribution and legal subrogation against all insurer Defendants and the CNA Trust.  (Id. at 2–3.)  In response to Bevidere's Amended Complaint, Triangle has filed the instant Motion to Dismiss, urging the Court to decline to exercise federal discretionary jurisdiction over this declaratory action.  (Id. at 7.)

## II. STANDARD OF REVIEW

This matter is an action for declaratory relief under the Federal Declaratory Judgment

Act, which provides in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United
> States, upon the filing of an appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such declaration, whether or not
> further relief is or could be sought.

28 U.S.C. § 2201(a).  A court's exercise of jurisdiction under the Declaratory Judgment Act is

not mandatory.  Bituminous Cas. Corp. v. J & L Lumber Co., Inc., 373 F.3d 807, 812 (6th Cir.

2004) (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942)).  In determining

whether to exercise such discretion, and thus whether a case is appropriate for declaratory

judgment, this Court considers the five factors enumerated by the Sixth Circuit in Grand Trunk

Western Railroad Co. v. Consolidated Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984):

> (1) whether the judgment would settle the controversy;
>
> (2) whether the declaratory judgment action would serve a useful purpose in
> clarifying the legal relations at issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of
> "procedural fencing" or "to provide an arena for a race for *res judicata*";
>
> (4) whether the use of a declaratory action would increase the friction between
> our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy that is better or more effective.

Bituminous, 373 F.3d at 813 (citing Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir.

2000)).

The Sixth Circuit has "held in insurance coverage diversity cases that 'declaratory

judgment actions seeking an advance opinion on indemnity issues are seldom helpful in

resolving an ongoing action in another court.'"  Bituminous, 373 F.3d at 812 (quoting Manley,

Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co., 791 F.2d 460, 463 (6th Cir. 1986)).

Further, the Sixth Circuit has emphasized that "such actions . . . should normally be filed, if at

all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem.

Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata*

are created."  Id. (alteration in original) (quoting Manley, 791 F.2d at 463) (citing Roumph, 211

F.3d 964; Grand Trunk, 746 F.2d at 326).

**III. DISCUSSION**

Bevidere urges the Court to exercise jurisdiction over this matter, arguing that all five of

the Grand Trunk factors weigh in favor of jurisdiction.  Triangle contends that the Court should

decline to exercise jurisdiction over this action, arguing that the balance of the Grand Trunk

factors weighs against the exercise of jurisdiction over this insurance coverage dispute.

Considering the five factors, the Court believes that exercising jurisdiction in this case would be

improper in these circumstances and declines to do so.

### A.   Factors 1 and 2: Settlement of the Controversy and Clarification of Legal Relations

In the context of lawsuits by insurance companies to determine policy coverage

obligations, courts often consider the first and the second factors together.  See Travelers Indem.

Co. v. Bowling Green Prof'l Assocs., PLC, 495 F.3d 266, 271–72 (6th Cir. 2007); see also

Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 557 (6th Cir. 2008) (noting that the "second factor

in the Grand Trunk analysis is closely related to the first factor and is often considered in

connection with it").  As the Sixth Circuit explained in Flowers, 513 F.3d at 555, two diverging

lines of precedent have developed within the Circuit with respect to these first two Grand Trunk

factors.  Auto Club Prop.-Cas. Ins. Co. v. Denton, No. 4:15-CV-00035-JHM, 2015 WL 4484173,

at *3 (W.D. Ky. July 22, 2015).

The first line of cases "has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." Flowers, 513 F.3d at 555 (citing Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 454 (6th Cir. 2003)).   That line of cases has also determined, with respect to the second factor, that "the district court's decision must only clarify the legal relations presented in the declaratory judgment action." Id. at 557 (citing Northland, 327 F.3d at 454).   However, the second line of cases "has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." Id. at 555 (citing Travelers, 495 F.3d at 272; Bituminous, 373 F.3d at 814).   In this line of cases, the district court's decision "must also clarify the legal relations in the underlying state action" in order for the second factor to weigh in favor of jurisdiction. Id. at 557 (citing Travelers, 495 F.3d at 272; Bituminous, 373 F.3d at 814). As in previous opinions, in handling the first two factors, "this Court joins those courts which, after Flowers, conclude that where district courts, in declaratory judgment actions, will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action, the declaratory action need only settle the controversy and clarify the legal relations between the insured and the insurer." Denton, 2015 WL 4484173, at *3.   Therefore, it is important to consider what questions Bevidere is asking the Court to answer.

Bevidere seeks a declaration by this Court that it has exhausted its obligations under its insurance policies with Triangle and it no longer has a duty to defend or indemnify Triangle in the numerous underlying state court asbestos actions across multiple states.   Bevidere has asserted that it has paid $2,000,000 in indemnity—$500,000 from each primary policy and

$1,000,000 in the umbrella policy.  Under these primary policies, Bevidere agreed that it "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by **an occurrence**, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage . . . ."  (Am. Compl. [DN 7] ¶ 20 (emphasis added).)  The definition of "occurrence" under the policies is: "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  (Id. ¶ 21.) Bevidere's umbrella policy additionally covers each "occurrence" which is defined in the same manner as the primary policies.  Further, the primary policies state:

> Subject to the above provision respecting "each occurrence", the total liability of the company for all damages because of (1) all bodily injury included with the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed the limit of bodily injury liability stated in the declarations as "aggregate."

(Am. Compl. [DN 7] ¶ 23.)  The umbrella policy echoes that same language, and states:

> With respect to Coverage I(a) . . . except with respect to the Products-Completed Operations Hazards, all personal injury . . . arising out of one event or continuous or repeated exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed to be one occurrence. With respect to Coverages I(a) . . . all personal injury . . . arising out of the Product-Completed Operations Hazards shall be deemed to be one occurrence if arising out of one lot of goods or products prepared or acquired by the Named Insured or others trading under his name.

(Id. ¶ 31.)  All three policies define "completed operations hazard" as such:

>  "Completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured.  "Operations" include materials, parts or equipment furnished in connection therewith.  Operations shall be deemed to be completed at the earliest of the following times:

6

1. When all operations performed by or on behalf of the named insured under the contract have been completed[,]
2. When all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
3. When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(Id. ¶¶ 24, 32.)  And, the policies all define "products hazard" as such:

"Products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

(Id. ¶¶ 25, 33.)

Bevidere asserts that it has exhausted its indemnity obligations under these policies because Triangle's asbestos liabilities arise out of only **one occurrence**.  (Pl.'s Resp. [DN 68] at 9.)  In order to make this determination, the Court would be required to examine the contours of each underlying action and first decide whether the plaintiff has suffered bodily injury as defined by the policies: "[b]odily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom."  (Am. Compl. [DN 7] ¶ 22.) Next, the Court would determine whether that bodily injury arose out of Triangle's operations. Then, the Court would have to conclude whether the plaintiff's bodily injury arose after "such operations have been completed or abandoned and occurs away from premises owned by or rented to Triangle" under the completed operations hazard section.  (Id. ¶ 24, 32.)  This requires even further inquiry into whether 1) Triangle's operations under its contract have been completed; 2) Triangle's operations at the site of the operations have been completed; and 3) "the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in

performing operations for a principal as a part of the same project." (Id.)  The Court would then be required to take the factual findings from each of these underlying state court actions and determine whether they constitute one "occurrence" or multiple "occurrences" under the policies. Under the primary policies, the Court would need to decide whether the injuries arose "out of continuous or repeated exposure to substantially the same general conditions," and under the umbrella policy, whether the plaintiffs' injuries arose "out of one event or continuous or repeated exposure to substantially the same conditions existing at or emanating from one premises location." (Id. ¶¶ 21, 31.)

Bevidere argues that these issues—whether the plaintiffs' claims fall under the completed operations or products hazard clauses and whether or not their claims constitute one occurrence or multiple occurrences—will not arise in the underlying state actions.  While these issues may not be the subject of the state court litigation, this Court must rely on facts that have been developed and continue to be developed at the state court level, including, but not limited to, the plaintiffs' bodily injuries and the extent of Triangle's involvement.  This would require evaluating the facts of each case and making factual determinations that may be a part of the resolution of the civil actions currently pending in state court.  See Westfield Ins. Co. v. Siegel Founds., No. 3:10–CV–713–S, 2011 WL 3489353, at *4 (W.D. Ky. Aug. 9, 2011).  "These inquiries would not merely require consideration of matters of law that could be cleanly separated from the state-law proceedings, but rather would require factual analysis that would give rise to the possibility of contradictory results in state and federal court." Id.  As a result, this Court cannot settle the question of coverage without engaging in fact-finding that may impact the underlying actions.  Accordingly, the Court finds that while the declaratory action "might clarify the legal relationship between the insurer and the insured, [it] do[es] not settle the ultimate

controversy between the parties which is ongoing in state court."  Flowers, 513 F.3d at 555 (citing Travelers, 495 F.3d at 272; Bituminous, 373 F.3d at 814).

Furthermore, while this action would define the legal relations presented by the declaratory action, it would not resolve "the legal relations in the underlying state action[s]." Flowers, 513 F.3d at 557; see Bituminous, 373 F.3d at 812 (quoting Manley, 791 F.2d at 463) ("[D]eclaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.")  As a result, it would not serve a "useful purpose."  See Bituminous, 373 F.3d at 813–14 ("The declaratory judgment action in federal court could serve no useful purpose.  The federal court could either reach the same conclusions as the state court, in which case the declaration would have been unnecessary . . . or the federal court could disagree with the state court, resulting in inconsistent judgments."); Westfield, 2011 WL 3489353, at *4; Nautilus Ins. Co. v. Grayco Rentals, Inc., No. CIV.A. 10133–ART, 2011 WL 839549, at *4 (E.D. Ky. Mar. 7, 2011).   Given the potential for inconsistent rulings, "[t]he state court can . . . clarify these very same issues—perhaps better, with its state-law expertise and familiarity with this case."  Nautilus, 2011 WL 839549, at *4 (citing AmSouth Bank v. Dale, 386 F.3d 763, 786 (6th Cir. 2004)).  Accordingly, the Court finds that the first two factors weigh against exercising jurisdiction.

## B.  Factor 3: Procedural Fending and *Res Judicata*

"The third factor to be considered is whether the use of the declaratory judgment action is motivated by 'procedural fencing' or likely to create a race for *res judicata*."  Flowers, 513 F.3d at 558.  This factor "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum.'"  Flowers, 513 F.3d at 558

(quoting <u>AmSouth Bank</u>, 386 F.3d at 788).  In making this determination, "[t]he question is not which party has chosen the better forum, but whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first."  <u>AmSouth Bank</u>, 386 F.3d at 789.

Triangle asserts that Bevidere agreed to mediation under the terms of the CIP in order to "lull" Triangle and the other carriers into believing that an amicable negotiation was still viable. (Defs.' Redacted Mem. [DN 106-2] at 14.)  Specifically, Triangle argues that Bevidere's agreement to participate in the mediation gave it and other carriers the hope that an agreement could be reached without litigation, and Bevidere's filing suit soon after its agreement to negotiate evidences procedural fencing.  (<u>Id.</u> at 14.)

On the other hand, Bevidere argues against Triangle's procedural fencing argument, as neither it, nor any other insurer of Triangle's is a party to the underlying asbestos actions pending in several state courts, and none of those underlying actions involves the coverage issues presented here.  (Pl.'s Resp. [DN 68] at 11.)  Further, Bevidere asserts that it should "not be forced to participate in an [underlying state court] action" if it "in fact had no duty to indemnify its insured or to defend them in a state action."  <u>Northland</u>, 327 F.3d at 454.  And, because Bevidere is not a party to the underlying state court actions, its "attempt to clarify its legal obligations . . . in federal court cannot be construed as an attempt to create a race to judgment." <u>Flowers</u>, 513 F.3d at 558.[1]  Even more, Bevidere agreed to stay this declaratory judgment action

---

[1] Further, Bevidere claims that filing in the Louisville, rather than Paducah Division (where Triangle is located), does not qualify as procedural fencing, as Triangle has previously litigated with some of its insurers in Jefferson County several years ago and because the contracts at issue were created in Louisville.  (Pl.'s Resp. [DN 68] at 12.) These arguments do little to defend Bevidere's position in terms of procedural fencing and *res judicata*.  First, Triangle previously filed a third-party complaint in Jefferson County Circuit Court in which it did not choose the forum as a third party plaintiff.  (Defs.' Redacted Reply [DN 106-3] at 12.)  Second, there is no evidence in the record to the support the finding that all of the policies were created in Louisville.  (<u>Id.</u> at 21–22.)  Regardless, Bevidere's arguments here are unsupported by any authority in this Circuit or elsewhere and do not weigh heavily in the determination of this factor.

until the resolution of the mediation so as to not interfere with the mediation efforts.  (Pl.'s Resp. [DN 68] at 12.)

The Court is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record."  Flowers, 513 F.3d at 558.  Bevidere did agree to continue with the mediation and to stay this action pending the results of the CIP mediation.  Because the record does not reflect bad faith by Bevidere, the Court concludes that this factor is neutral.

### C. Factor 4: Increase of Friction and Improper Encroachment

In considering the fourth factor—whether the exercise of federal jurisdiction would increase friction between federal and state courts—three additional sub-factors are considered:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Bituminous, 373 F.3d at 814–15 (quoting Roumph, 211 F.3d at 968).  The Court will consider each of these sub-factors in turn.

### i. Importance of Underlying Factual Issues to Informed Resolution of the Case

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." Flowers, 513 F.3d at 560.  The Sixth Circuit has recognized that in actions seeking a declaration of insurance coverage, such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court.  See Northland, 327 F.3d at 454.  However, where "resolution of the issue raised in federal court will require making factual findings that might

conflict with similar findings made by the state court . . . the exercise of jurisdiction would be inappropriate." Flowers, 513 F.3d at 560 (citing Travelers, 495 F.3d at 272).

As explained above, any determination as to Bevidere's duty to defend or indemnify Triangle would possibly require fact-finding by this Court as to whether or not the plaintiffs in the underlying actions suffered bodily injury due to Triangle's completed operations or products hazards and factual determinations about the plaintiffs' bodily injuries might prove to be inconsistent with the state court's decision making. See Westfield, 2011 WL 3489353, at *5 ("In light of the danger of inconsistent findings by the state and federal courts, we conclude that this factor counsels strongly against the exercise of federal jurisdiction."). Therefore, the first sub-factor weighs against exercising jurisdiction, as the coverage questions at issue here are dependent on the outcome of factual inquiries made in the underlying state action.

### ii. State Court's Position to Evaluate Factual Issues

The second sub-factor focuses on whether this Court or the state court is in a better position to resolve those underlying factual issues. Triangle argues that questions about Bevidere's duties to defend and to indemnify and of Triangle's liability are all state law questions "with which the Kentucky state courts are more familiar and, therefore, better able to resolve." Travelers, 495 F.3d at 273 (quoting Bituminous, 373 F.3d at 815). Further, when there are "unresolved questions of state law concerning state regulated insurance contracts, this consideration weighs against exercising jurisdiction." Bituminous, 373 F.3d at 816. Bevidere argues instead that "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity." Flowers, 513 F.3d at 560 (quoting Northland, 327 F.3d at 454). And, because, as Bevidere asserts, these

12

coverage issues are not before any state courts and Kentucky law is clear on the key coverage issues, this Court is appropriately equipped to address these state law issues.

Should the Court exercise jurisdiction here, the Court would need to address three important issues of state law.  The first deals with the definition of "occurrence" under Kentucky law and the terms of the policies.  The second deals with the allocation method (all sums or *pro rata*) for defense and indemnity costs.  And the last deals with the completed operations hazard and products hazard clauses within the primary and umbrella policies.  In order to decide these state law issues, this Court would be required to make factual findings based on the pending underlying state actions.  Additionally, each of the three issues is contested by the parties.  For example, though Kentucky Supreme Court has decided that the "cause approach" is appropriate when determining the number of "occurrences" under an insurance policy, Triangle argues that this may not necessarily be the case under Kentucky state law in long-tail, asbestos-related insurance claims.  (Defs.' Redacted Reply [DN 106-3] at 14.)  Additionally, the parties argue over whether the all sums or *pro rata* apportionment method is appropriate; Bevidere claims Kentucky law is well-settled on the *pro rata* method, but Triangle argues that this ignores the plain language of the policies and points to Kentucky League of Cities Ins. Servs. Ass'n v. Argonaut Great Cent. Ins. Co., No. 5:11-CV-00187, 2013 WL 120013, at *3 (W.D. Ky. Jan. 8, 2013), which states that "[n]o Kentucky court has addressed the manner in which defense costs are to be apportioned to consecutive insurers in continuous exposure cases."  And, Bevidere posits that this Court can reasonably predict Kentucky law on the completed operations and product hazard issues using Maryland and Missouri law, while Triangle asserts that this complicated issue would be best left for the Kentucky state courts to resolve, considering Kentucky courts have yet to address it as a matter of first impression.  The Court agrees that the

state court here is in a better position to decide the issues here because they all involve questions purely of state law.  See Nautilus, 2011 WL 839549, at *3.  Importantly, each issue deals with some unsettled, or even novel, aspect of Kentucky law.  This point is most underscored by Bevidere's comment that, in dealing with any uncertainty regarding these state law issues, this Court can "certify any of these questions of law to the Kentucky Supreme Court."  (Pl.'s Resp. [DN 68] at 16.)  Accordingly, the Court finds that these state law issues are best left for the state court to evaluate, and this sub-factor weighs heavily against exercising jurisdiction.

### iii. Close Nexus Between Issues and State Law and Policy

The final sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court."  Flowers, 513 F.3d at 561.  This case involves the scope of an insurance contract.  "[S]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation."  Id. at 273 (quoting Bituminous, 373 F.3d at 815).  Additionally, this case is not likely to turn on federal common law or federal statutory law.  Rather, state laws will dictate the resolution of the state court actions and state law will dictate the resolution of this declaratory judgment action.  See Horace Mann Ins. Co. v. Alberts, No. CIV.A. 1:06CV–181–M, 2007 WL 3025071, at *4 (W.D. Ky. Oct. 15, 2007); Westport Ins. Corp. v. Al Bourdeau Ins. Servs., No. 07–12106, 2007 WL 2225874, at *4 (E.D. Mich. Aug. 2, 2007).  Just as in Travelers, "[t]his is not a case where federal law will come into play, and, therefore, a state court forum is preferable."  495 F.3d at 273.  Therefore, the Court finds that this sub-factor weighs heavily against exercising jurisdiction.

### D.  Factor 5: Alternative Remedy

The final factor to consider is the availability of alternative remedies that are better or more effective than a federal declaratory judgment. An alternative remedy available to Bevidere is to seek a declaratory judgment in state court. Kentucky law provides a declaration of rights procedure. KRS § 418.040 ("In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked."); Flowers, 513 F.3d at 562; Bituminous, 373 F.3d at 816; Denton, 2015 WL 4484173, at *6. "A Kentucky court would also be better suited than a federal court to resolve the issues in this case, which rest entirely on state law." ACE Capital Ltd. v. Keystone Servs., Inc., No. 3:12CV-00103-JHM, 2013 WL 820836, at *5 (W.D. Ky. Mar. 5, 2013) (quoting Westfield, 2011 WL 3489353, *5); see Travelers, 495 F.3d at 272. This is especially true here because these issues involved unsettled questions of state law. And, while Bevidere claims it might be difficult to intervene in each of the pending state court actions, another possible remedy is for Bevidere to file an indemnity action at the conclusion of the state actions. Denton, 2015 WL 4484173, at *6; see Flowers, 513 F.3d at 562; Travelers, 495 F.3d at 273; Nautilus, 2011 WL 839549, at *4. For these reasons, the Court finds that this factor weighs against exercising jurisdiction in this case.

Accordingly, the Court finds that the balance of these factors weighs against exercising jurisdiction in the present case. Thus, the Court declines to exercise jurisdiction of this declaratory judgment action.

## IV. CONCLUSION

For the reasons set forth above, the Court declines to exercise federal discretionary jurisdiction over this declaratory judgment action. Therefore, **IT IS HEREBY ORDERED** that

Defendant Triangle's Motion to Dismiss [DN 46] is **GRANTED** and Defendant Triangle's alternative Motion to Transfer is **DENIED** as moot.  Further, Plaintiff Bevidere's Motion for Oral Argument [DN 69] is **DENIED**, and Defendant Triangle's Motion for Leave to Exceed Page Limit in its Reply to its Motion to Dismiss [DN 90] is **GRANTED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

February 15, 2017

cc: counsel of record